**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:26-CV-61013-AHS**

HAILEY BUSH, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

**ORAL ARGUMENT REQUESTED**

FASHION NOVA, LLC,

Defendant.
____________________________________/

**DEFENDANT FASHION NOVA'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C)**

Jordan S. Kosches, Esq.
Florida Bar No.: 49881
jordan.kosches@gray-robinson.com
GRAY ROBINSON, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

*Attorneys for Defendant, Fashion Nova, LLC*

# TABLE OF CONTENTS

I INTRODUCTION .......... 1

II BACKGROUND .......... 2

III LEGAL STANDARD UNDER RULE 12(C) .......... 3

IV ARGUMENT .......... 3

A. THE TCPA MUST BE INTERPRETED AS WRITTEN IN 1991, UNCONSTRAINED BY THE FCC'S ORDERS .......... 3

B. STATUTORY AND REGULATORY BACKGROUND .......... 4

1. Congress Drafted Section 227(c) of the TCPA to Apply Only To *Telephone Calls*. .......... 4

2. In a 2003 Order, the FCC Proclaimed That Text Messages Are "Calls," And Courts Deferred to that Atextual Proclamation. .......... 5

C. THIS COURT SHOULD GRANT A MOTION FOR JUDGMENT ON THE PLEADINGS BECAUSE 47 U.S.C. § 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES .......... 6

1. The Plain Language of Section 227(c)(5) Requires this Court to Grant a Motion for Judgment on the Pleadings. .......... 6

2. Principles of Statutory Interpretation Limit the Scope of a "Telephone Call." .......... 8

3. Policy Goals Cannot Overcome Plain Language. .......... 10

V CONCLUSION .......... 11

**TABLE OF AUTHORITIES**


| **Cases** | **Page(s)** |
|---|---|
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 3 |
| *Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078 (D.C. Cir. 2017) | 12 |
| *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) | 3 |
| *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018) | 3 |
| *Davis v. CVS*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025) | 12 |
| *Davis v. Great N. Ins. Co.*, No. 21-cv-61958, 2022 WL 794629 (S.D. Fla. Mar. 16, 2022) | 3, 12 |
| *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) | 2, 12 |
| *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021) | 12 |
| *Henry v. Jones*, 484 F. App'x 290 (11th Cir. 2012) | 3 |
| *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) | 12 |
| *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303 (11th Cir. 2025) | 12 |
| *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) | 12 |
| *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) | 12 |
| *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) | 1, 3, 4, 12 |
| *Lopresti v. Nouveau Essentials Marketing*, No. 5:25-cv-00282, 2026 U.S. Dist. LEXIS 39599 (M.D. Fla. Feb. 26, 2026) | 12 |

*Mais v. Gulf Coast Collection Bureau, Inc.*,
768 F.3d 1110 (11th Cir. 2014) .......... 4, 12

*McGonigle v. Pure Green Franchise Corp.*,
No. 25-cv-61164, 2026 WL 111338 (S.D. Fla. Jan. 15, 2026) .......... 1, 4

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*,
606 U.S. 146 (2025) .......... 1, 4, 12

*Murphy v. DCI Biologicals Orlando*,
LLC, 797 F.3d 1302 (11th Cir. 2015) (deferring wholesale to the FCC's 2003 Order) .......... 12

*Perrin v. United States*,
444 U.S. 37 (1979) .......... 12

*Pugliese v. Pukka Dev., Inc.*,
550 F.3d 1299 (11th Cir. 2008) .......... 12

*Pulsifer v. United States*,
601 U.S. 124 (2024) .......... 12

*Radvansky v. 1-800-Flowers.com, Inc.*,
No. 1:25-cv-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) .......... 12

*Richards v. Fashion Nova, LLC*,
No. 1:25-cv-01145, 2026 U.S. Dist. LEXIS 65696 (S.D. Ind. March 26, 2026) .......... 12

*Royal v. Ga. CVS Pharm., L.L.C*,
No. 1:26-cv-01357, 2026 U.S. Dist. LEXIS 123170 (N.D. Ga. May 8, 2026) .......... 12

*In re Rules & Regulations Implementing the TCP Act of 1991*,
30 FCC Rcd 7961 (2015) .......... 12

*In Re Rules and Regulations Implementing the TCPA of 1991*,
18 FCC Rcd. 14014 .......... 1, 12

*Salcedo v. Hanna*,
936 F.3d 1162 (11th Cir. 2019) .......... 2, 12

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) .......... 12

*Sayed v. Naturopathica Holistic Health, Inc.*,
No. 8:25-cv-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) .......... 12

*Stockdale v. Skymount Prop. Grp., LLC*,
No. 1:25 CV 1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026) .......... 12

*In Re Targeting & Eliminating Unlawful Text Messages Rules & Regs. Implementing the TCPA of 1991*,
38 F.C.C. Rcd. 12247 (2023) .......... 12

*Trim v. Reward Zone USA LLC*,
76 F.4th 1157 (9th Cir. 2023) .......... 12

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) .......... 12

*Wisconsin Cent. Ltd v. United States*,
585 U.S. 274 (2018) .......... 12

**Statutes**

105 Stat. 2394 (1991) .......... 4

Telephone Consumer Protection Act "TCPA", 47 U.S.C. 227 .......... *passim*

**Other Authorities**

47 C.F.R. § 64.1200(c)(1) .......... 1, 2

47 C.F.R. § 64.1200(c)(2) .......... 1, 2

*Notice of Proposed Rulemaking*, 17 FCC Rcd 17459, ¶ 1 (2002) .......... 12

Rule 12(b)(6) .......... 3

Rule 12(c) .......... 3

# I INTRODUCTION

Plaintiff Hailey Bush alleges that Fashion Nova violated the Telephone Consumer Protection Act, 47 U.S.C. 227 ("TCPA"), based on two alleged regulatory violations. First, she contends that Fashion Nova sent her text messages during the so-called "quiet hours" set forth in 47 C.F.R. § 64.1200(c)(1) ("Quiet Hours Provision"). Second, she contends that Fashion Nova sent her text messages despite her telephone number being listed on the National Do-Not-Call Registry ("DNC Registry"), in violation of 47 C.F.R. § 64.1200(c)(2) ("DNC Provision"). Plaintiff pursues both claims through the private right of action afforded under 47 U.S.C. § 227(c)(5).

Section 227(c)(5) does not apply to text messages. Plaintiff's only route to claim otherwise is that the Federal Communications Commission ("FCC") has previously issued orders simply declaring that a text message is a "call." But on June 20, 2025, the Supreme Court issued its decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, 606 U.S. 146, 168 (2025) holding trial courts are "not bound by the FCC's interpretation of the TCPA." Instead, this Court must reach the "single, best meaning" of the provision at issue, using "the reading the court would have reached if no agency were involved" to interpret the TCPA. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) (internal quotations and citation omitted).

The controlling interpretation is the best reading of the TCPA as written in *1991* (when it was enacted), in light of the Supreme Court's instruction that "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotation and citation omitted). Indeed, this Court has already signaled it would resolve whether a "telephone call" includes text messages "by applying the canons of construction, analyzing precedent, and looking to other persuasive court opinions, not by deferring to the [FCC's] interpretation." *McGonigle v. Pure Green Franchise Corp.*, No. 25-cv-61164, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026).

Turning to the TCPA at the time it was enacted, Plaintiff's claims must be dismissed. Plaintiff alleges only that she received a text message on her cell phone, but the plain language of the TCPA and its history indicate that the term "telephone call" could not have been intended to cover text messages, a form of written communication that did not exist in 1991. As the Eleventh Circuit put it, "[t]he TCPA is completely silent on the subject of unsolicited text messages," notwithstanding the subsequent amendments by Congress. *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). Text messaging did not exist in 1991, and "it is only through the rulemaking authority of the FCC that the voice call provisions of the TCPA have been extended to text messages." *Id*.

This Court should grant Fashion Nova's motion for judgment on the pleadings. Plaintiff cannot avail herself of the claims at issue, which is evident from the face of Plaintiff's Complaint.

## II BACKGROUND

Plaintiff's case pertains exclusively to text messages. Namely, Plaintiff contends that she has received text messages from Fashion Nova between the hours of 9:00 p.m. and 8:00 a.m. (Dkt. 1 ¶ 32.) Plaintiff alleges that these text messages violated the Quiet Hours Provision of the TCPA, which provides: "No person or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)." 47 C.F.R. § 64.1200(c)(1).

Plaintiff also alleges that she received text messages even though her telephone number is on the DNC Registry. (*Id.* ¶ 57.) Plaintiff alleges the text messages therefore violated the DNC Provision of the TCPA, which provides: "No person or entity shall initiate any telephone solicitation to: … (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2).

On these grounds, Plaintiff brings claims under Section 227(c)(5) of the TCPA, which creates a private right of action for a "person who has received more than one telephone call within any 12-month period" in violation of these regulations. 47 U.S.C. § 227(c)(5).

## III LEGAL STANDARD UNDER RULE 12(C)

Pursuant to Rule 12(c), "after the pleadings are closed, a party may move for judgment on the pleadings if no material facts remain at issue and the parties' dispute can be resolved on the pleadings and those facts of which the court can take judicial notice." *Davis v. Great N. Ins. Co*., No. 21-cv-61958, 2022 WL 794629 at *2 (S.D. Fla. Mar. 16, 2022). A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6). *Carbone v. Cable News Network, Inc*., 910 F.3d 1345, 1350 (11th Cir. 2018). To survive, a complaint must provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). This means that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts accept well-pleaded facts as true, they "do not . . . accept as true unwarranted deductions of fact or legal conclusions." *Henry v. Jones*, 484 F. App'x 290, 291 (11th Cir. 2012) (internal quotations and citation omitted).

## IV ARGUMENT

### A. THE TCPA MUST BE INTERPRETED AS WRITTEN IN 1991, UNCONSTRAINED BY THE FCC'S ORDERS

The Supreme Court has issued two recent decisions effecting a sea change in statutory interpretation. In 2024, the Supreme Court eliminated *Chevron* deference, returning courts to their traditional function to reach the "best" interpretation of a statute, using "the reading the court would have reached if no agency were involved." *Loper Bright*, 603 U.S. at 400 (internal

quotations and citation omitted). Critically, the Supreme Court further reminded that "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

In 2025, the Supreme Court issued its decision in *McLaughlin Chiropractic*. This decision is critical because, until then, the Eleventh Circuit viewed FCC Orders as dispositive at the district court level under a statute known as the Hobbs Act. That is, "the district court lack[ed] jurisdiction" to rule contrary to FCC rulings. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120 (11th Cir. 2014). But the Supreme Court has now eliminated this line of authority, holding that district courts are not "bound by the FCC's interpretation of the TCPA." 606 U.S. at 168. Rather, courts are to interpret the TCPA as courts traditionally do. *Id.* As this Court recently stated: "[A]gencies have no special competence in resolving statutory ambiguities. Courts do." *McGonigle*, 2026 WL 111338, at *2 (quoting *Loper Bright*, 603 U.S. at 373).

The confluence of *Loper Bright* and *McLaughlin Chiropractic* results in the following: the provision of the TCPA at hand must be interpreted to reach the "best" interpretation, as the statute was written in 1991 (when it passed), unconstrained by the interpretation of the FCC.

### B. STATUTORY AND REGULATORY BACKGROUND

#### 1. Congress Drafted Section 227(c) of the TCPA to Apply Only To *Telephone Calls.*

In 1991, Congress enacted the TCPA. *See* P.L. 102-243, 105 Stat. 2394 (1991). Section 227(c) of the TCPA, under which Plaintiff brings her claim, affords a private right of action to "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Section 227(c) does not mention text messages, even though the TCPA itself distinguishes between telephone calls and text messages in other sections. *See* 47 U.S.C. § 227(e).

### 2. In a 2003 Order, the FCC Proclaimed That Text Messages Are "Calls," And Courts Deferred to that Atextual Proclamation.

In 2002, the FCC issued a Notice of Proposed Rulemaking regarding its desire to update the TCPA to account for "[n]ew technologies" that emerged since the TCPA's enactment. *See Notice of Proposed Rulemaking*, 17 FCC Rcd 17459, ¶ 1 (2002) ("NPRM").

Though the NPRM did not mention text messages, in 2003, the FCC proclaimed the term "call" under the TCPA "encompasses both voice calls and text calls."[1] *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003) ("2003 Order").[2] The FCC identified no statutory basis or authority for concluding that a text message was a "call," and provided no rationale for its *ipse dixit* conclusion. *See id.* The FCC did not even attempt to expand "telephone call" under Subsection 227(c)(5) to encompass text messages until 2023. *See In Re Targeting & Eliminating Unlawful Text Messages Rules & Regs. Implementing the TCPA of 1991*, 38 F.C.C. Rcd. 12247, 12256-57 (2023). The FCC similarly provided no substantive statutory analysis for its conclusion except for citing back to its edict from the 2003 Order. *Id.* at 12250 n.8.

In response to the 2003 Order, courts simply fell in line on the auspices that they were obligated to defer to FCC edicts. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding that courts "must defer" to the FCC's determination that a text message

---

[1]Strictly speaking, the FCC only addressed text messages in the context of a "call" under Section 227(b) rather than a "telephone call" under Section 227(c). This distinction supports Fashion Nova's argument, though the material analysis remains the same even if this is disregarded. *See, e.g.*, *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) (noting the FCC was not interpreting the term "telephone call" under Subsection 227(c)(5)).

[2] In various subsequent orders, the FCC reiterated that it considers text messages to be "calls" under the TCPA. *See In re Rules & Regulations Implementing the TCP Act of 1991*, 30 FCC Rcd 7961 (2015). However, the FCC simply perfunctorily refers back to the 2003 Order as to why that is supposedly the case. *See id.* at ¶ 1 n.3.

was a "call"); *Murphy v. DCI Biologicals Orlando*, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015) (deferring wholesale to the FCC's 2003 Order); *see also Mais*, 768 F.3d at 1121.

The Eleventh Circuit thus correctly recognized in *Salcedo* that the TCPA (in relevant part) was "completely silent" on text messages; rather "it is only through the rulemaking authority of the FCC that the voice call provisions of the TCPA have been extended to text messages." 936 F.3d at 1169. But, as discussed above, the Court is no longer bound to defer to the FCC. And as detailed below, this Court should side with the wave of recent authority disregarding the FCC's unsupported view. A text message *is not* a telephone call.

### C. THIS COURT SHOULD GRANT A MOTION FOR JUDGMENT ON THE PLEADINGS BECAUSE 47 U.S.C. § 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES

#### 1. The Plain Language of Section 227(c)(5) Requires this Court to Grant a Motion for Judgment on the Pleadings.

With the elimination of *Chevron* and the Hobbs Act as hurdles, the issue for the Court now is a straightforward matter of statutory interpretation: whether a text message is a "telephone call" under Section 227(c)(5). The Court must apply "ordinary principles of statutory construction" to reach the *best* interpretation of that term as written in 1991. *McLaughlin Chiropractic*, 606 U.S. at 168. "In interpreting a statute, we start with the plain language." *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1303 (11th Cir. 2008). Simply put, a text message is not a telephone call.

No one can suggest that Congress, when it passed the TCPA, meant for "telephone call" to mean text message, given that text messaging "did not exist in 1991 when the TCPA was enacted." *Salcedo*, 936 F.3d at 1169; *see also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) (same); *Jones*, 792 F. Supp. 3d at 899 (same). It is inconceivable that Congress intended the common and well-understood term "telephone call" to encompass a form of *written* communication yet to exist, and one bearing no similarity to a telephone call. Reading "telephone

call" to encompass text messages would similarly render any type of communication—emails, app-to-app messages, push notifications—equally a "telephone call" if it is received on a handset. *See, e.g.*, *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 WL 591842, at *3 n.5 (N.D. Ohio Mar. 3, 2026) ("To hold otherwise would suggest that any communication from a modern cell phone is a 'telephone call' under the TCPA, which might include messages sent through Internet applications downloaded onto a cell phone. This broad interpretation of "telephone call" is not supported by the term's plain meaning as defined in 1991."). As the Supreme Court emphasized in *Loper Bright*: "every statute's meaning is fixed at the time of enactment." 603 U.S. at 400 (internal quotation marks omitted).

But even if the Court were to look beyond the statute's meaning at the time of enactment, the outcome is the same. Even today:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.
>
> . . . . Certainly, no ordinary person would think of a text message as a "*telephone* call." This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.

*Davis v. CVS*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (internal citation omitted, emphasis in original); *see Perrin v. United States*, 444 U.S. 37, 42 (1979) ("[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

"[I]n any case of statutory construction, our analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). "The statutory text here *is* clear, and a text message is not a 'telephone call.'" *Davis*, 797 F. Supp. 3d at 1273 (emphasis in original) (granting motion to dismiss); *e.g.*, *Royal v. Ga. CVS Pharm., L.L.C*, No. 1:26-cv-01357, 2026 U.S. Dist.

LEXIS 123170 (N.D. Ga. May 8, 2026) (same); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) (same); *Lopresti v. Nouveau Essentials Marketing*, No. 5:25-cv-00282, 2026 U.S. Dist. LEXIS 39599 (M.D. Fla. Feb. 26, 2026) (same); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) (same); *accord, Stockdale*, 2026 WL 591842 (same); *Richards v. Fashion Nova, LLC*, No. 1:25-cv-01145, 2026 U.S. Dist. LEXIS 65696 (S.D. Ind. March 26, 2026).

**2. Principles of Statutory Interpretation Limit the Scope of a "Telephone Call."**

In addition to the plain language, the context of the TCPA itself and principles of statutory interpretation evidence that a "telephone call" is not a mercurial or nebulous term to encompass all outreach received on a handheld device. It carries its commonly understood meaning.

<u>First</u>, Congress amended the TCPA in 2018 and specifically brought text messages within the scope of the TCPA under a different provision regarding Caller ID requirements—and in doing so, distinguished telephone calls from text messages. *See* Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). Section 227(e) defines "caller identification services" by reference to "a call made using a voice service *or* a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A) (emphasis added). Congress thus distinguished between "a call made using a voice service" and a "text message sent using a text message service." *Id.* § 227(e)(8)(A), (B).

This proves that Congress, like everyone else, views a call and a text message as separate forms of communication. Yet Congress did not amend Section 227(c) to include text messages—nor has it in the myriad amendments to the TCPA over the last 20 years. *See Stockdale*, 2026 WL 591842, at *4 n.7 ("Congress knows how to include text messages when it wants to, like it did in

a different section of the TCPA through a 2018 amendment."); *Radvansky*, 2026 WL 456919, at *3 (same); *Sayed*, 2025 WL 2997759, at *2 (same).

This is critical because "[i]n a given statute, . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). If Congress intended for the term "telephone call" to include text messages in Section 227(c), the delineation between calls and text messages in Section 227(e) would be meaningless. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

Second, Congress's definition of "telephone solicitation" makes clear that Congress did not view "telephone calls" and "messages" to be interchangeable terms. The TCPA defines "telephone solicitation" to "mean[] the initiation of a telephone call *or* message . . . ." 47 U.S.C. § 227(a)(4) (emphasis added). The private right of action under 47 U.S.C. § 227(c)(5) refers only to "telephone call." 47 U.S.C. § 227(c)(5). As the court in *Davis* explained, this "shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" 797 F. Supp. 3d at 1274; *see also Radvansky*, 2026 WL 456919, at *4 (same). Courts should "presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." *Davis*, 797 F. Supp. 3d at 1274.

Third, Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It would make no sense for Congress to hide within the commonly understood term "telephone call" all communication forms (now and in the future) received on a handset. There is nothing about the term "telephone call" that suggests Congress's

intent to expansively include a form of written communication much more analogous to a letter or an email, much less other forms of communication (like emails and app-based messaging) also received on a handset. Congress remains free to speak clearly and amend the TCPA to include text messages should it so choose. In the meantime, "telephone call" is a simple and commonly understood term; it does not include text messages.

The Supreme Court said it best: "'Senescent' as a [TCPA provision] (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading . . . ." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). So, too, here. That "telephone calls" may have given way to a more preferred form of written communication is no cause to eschew the best reading.

**3. Policy Goals Cannot Overcome Plain Language.**

Whether it may be good policy to include "text messages" within the term "telephone call," only Congress can "revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). Plaintiff cannot turn to this Court to further her policy goals. Plaintiff must turn to Congress.

This Court's role is narrowed to the text of the statute. *See, e.g.*, *Davis*, 797 F. Supp. 3d at 1274 ("[T]the court's role is not to look beyond clear language to ascertain Congress's purpose."); *Jones*, 792 F. Supp. 3d at 901 ("It is not for a court to legislate by reading into the TCPA something that is not there."); *Stockdale*, 2026 WL 591842, at *4 ("But it is for Congress—not this Court—to fill those gaps in the wake of Chevron's reversal."). Indeed, as the Supreme Court reminded in *Loper Bright*, "[c]ourts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." *Loper Bright*, 603 U.S. at 403; *see also Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 315 (11th Cir. 2025) ("Atextual good policy cannot overcome clear text."); *Bais Yaakov of Spring Valley v. Fed. Commc'ns*

*Comm'n*, 852 F.3d 1078, 1083 (D.C. Cir. 2017) ("But the fact that the agency believes its [TCPA rule] is good policy does not change the statute's text.").

The Supreme Court recently had occasion to evaluate a similar effort to read the TCPA's terminology to encompass new and evolving technologies. In *Facebook, Inc. v. Duguid*, the Supreme Court evaluated an effort by a plaintiff to expand the term "automatic telephone dialing system" in the TCPA—another term drafted in 1991—to embrace certain modern dialing equipment. 592 U.S. 395 (2021). The Court rejected this argument, including the broad policy arguments articulated by the plaintiff. *Id*. at 408 ("That Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."). The Court determined that "Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked." *Id*. at 409.

The TCPA was not intended to act as free-wheeling statute to address all outreach received on a handheld device. A text message is not a "telephone call" and is not actionable under Section 227(c)(5), unless and until Congress amends the statute. And it is the exclusive province of Congress to so amend the TCPA. *See, e.g.*, *Jones*, 792 F. Supp. 3d at 901 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025. The Court confines itself to its assigned role which does not include legislating.").

## V CONCLUSION

For the foregoing reasons, Fashion Nova's Motion for Judgment on the Pleadings should be granted.

**REQUESTS FOR ORAL ARGUMENT**

Fashion Nova respectfully requests the Court to schedule oral argument on this motion and suggests that one-hour would be sufficient. Given the intricacies of the issues involved, the undersigned believes that oral argument would be beneficial because it would allow the parties the opportunity to further address their positions and to answer questions posed by the Court.

Respectfully submitted,

*s/ Jordan S. Kosches*

Jordan S. Kosches, Esq.
Florida Bar No.: 49881
jordan.kosches@gray-robinson.com
GRAY ROBINSON, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

*Attorneys for Defendant, Fashion Nova, LLC*